```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                              Criminal No. 07-252-JD
                                                            Opinion No. 2008 DNH 211

Eduardo K. Fernandez-Avalos and
Maria C. Rosario

## O R D E R

Codefendants Eduardo K. Fernandez-Avalos and Maria C. Rosario ("Rosario"), are charged with conspiracy to structure financial transactions in violation of 31 U.S.C. § 5324(a)(3). Before the court is Rosario's motion in limine to exclude a witness's identification of her from a photographic array. With her motion, Rosario submitted a copy of the photographic array and an excerpt from the United States Department of Justice's handbook of recommended practices. The government objects to the exclusion. With its objection, the government submitted a suspicious transaction report completed by the witness, a memo from the investigating agent regarding the photo identification, and the Drug Enforcement Agency's Report of Investigation completed by the investigating agent. Upon an order from the court, the government also submitted the original photographic array.

I.   Background

The following findings of fact are based upon the above listed materials.  On February 17, 2006, two men and a woman entered the United States Post Office in Atkinson, New Hampshire, where the woman and one of the men separately purchased three money orders in the amounts of $1000, $1000, and $995.  The three individuals left together and drove away in a car with a Massachusetts license plate.  Earlier that day, a nearly identical occurrence was reported at the post office in Plaistow, New Hampshire, and several similar transactions occurred at post offices in Massachusetts on February 16 and 17.  Together, the money orders purchased by the trio over the two days totaled more than $40,000.

Each of the clerks in New Hampshire who sold the money orders to these individuals filled out a Suspicious Activity Report, which, among other things, described the individuals.  In her report, the Plaistow clerk described the woman as "a Hispanic female, approximately 5'1" – 5'2", with brown slightly curly hair and average build."  United States Objection, Ex. 3, ¶ 13.  The Atkinson clerk's report described the woman she saw as "of Hispanic origin," "45-50" years old, and "5'4" [/] 135 lbs."  Id., Ex. 1.  The reports also provided a license plate number for the car.

Postal Inspector John J. Stassi investigated these activities and discovered that the car described in the reports was owned by Enterprise Rent-A-Car and had been rented to Rosario on February 2, 2006, and returned on February 17, 2006. A copy of Rosario's driver's license photo was obtained from the Florida Department of Motor Vehicles and included in a photographic identification line-up containing photos of seven other women. On July 25, 2006, Postal Inspector John Stassi presented the photographic line-up to the clerk at the Atkinson Post Office who sold the money orders to the woman on February 17, 2006. The clerk identified Rosario as the woman who purchased the money orders; she initialed and dated Rosario's photo, and agreed to testify in court regarding her identification. That same day, Inspector Stassi presented a photographic lineup to the clerks at the Plaistow Post Office, but neither clerk could identify the woman who had purchased the money orders. Inspector Stassi recorded these events in his Report of Investigation prepared on July 27, 2006.

On December 12, 2007, Rosario and Fernandez were charged in a federal indictment with conspiracy to structure financial transactions in violation of 31 U.S.C. § 5324(a)(3). Rosario and Fernandez were arrested at Fernandez's home in Miami on December 18, 2007.

II.  Applicable Legal Standard

Under the Due Process Clause of the United States Constitution,"out-of-court identification based on a photo array" will be suppressed only if the identification procedure was "impermissibly suggestive," and the suggestiveness "'g[a]ve rise to a very substantial likelihood of misidentification.'" United States v. Holliday, 457 F.3d 121, 125 (1st Cir. 2006) (quoting Neil v. Biggers, 409 U.S. 188, 197 (1972)).  Identification evidence will be suppressed "'only in extraordinary cases.'" Holliday, 457 F.3d at 125 (1st Cir. 2006) (quoting United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003)).  "In most cases, the jury is capable of assessing the appropriate weight to be given to identification evidence."  United States v. Bouthot, 878 F.2d 1506, 1516 n.11 (1st Cir. 1989).

The admissibility of an out-of-court identification based on a photo array involves a two-part test.  The defendant must first demonstrate that the procedure is impermissibly suggestive. United States v. Guzman-Rivera, 990 F.2d 681, 682 (1st Cir. 1993).  The court will examine "the suggestiveness of the identification, and . . . whether there was some good reason for the failure to resort to less suggestive procedures."  Holliday, 457 F.3d at 125 (internal quotation marks omitted).  The court may consider the number of individuals included in the array who

bear similarities with the suspect, id. at 126, placement of the photograph within the array, and whether other conduct by the police emphasized the defendant's photograph, United States v. Flores, 149 F.3d 1272, 1279 (10th Cir. 1998).  The First Circuit has recognized that photos of individuals which contain slightly darker or lighter backgrounds, or photos which depict persons with skin pigmentations slightly different from the suspect do not rise to the level of impermissible suggestiveness prohibited by the Due Process Clause.  See United States v. Brennick, 405 F.3d 96, 100 (1st Cir. 2005).

If the photo array is deemed impermissibly suggestive, the court must then address "whether, under the totality of the circumstances, the suggestiveness is such that there is a very substantial likelihood of irreparable misidentification." Bouthot, 878 F.2d at 1514.  The court will consider the following factors:  "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  Id.

III. Discussion

Rosario argues that the photographic array was impermissibly suggestive because her picture had a white background while the others had a gray background, her picture was clear while the others were blurry, her picture had a brighter tone and color, her skin tone is different from the others, and she is the only one wearing jewelry and make-up, including bright lipstick, while the other women are in jail clothes.[1]

Based on its review of the photographic array shown to the witness on July 25, 2006, the court concludes that it was not impermissibly suggestive. The witness described the woman she saw as Hispanic, forty-five to fifty years of age, 5'4" tall and 135 pounds. The photo array consisted of eight photographs all in mug shot format, showing females who could appear to be of Hispanic descent, between forty and fifty years of age. All of the women have dark brown hair and are wearing light colored

---

[1] In her argument that the photographic array is impermissibly suggestive, Rosario also asserts that if the identifying witness is not Hispanic, she reserves the right to argue that the cross racial identification is inaccurate. This argument, however, is not part of the impermissibly suggestive analysis, is supported solely by a law review article from 1977, and is not yet an issue, because the race of the witness has not been disclosed. The court, therefore, rejects Rosario's argument on this point.

shirts.  Five of the women, including Rosario, have dark complexions while three have light complexions.  The backgrounds in all the photos are either gray or light gray and two contain backgrounds as light as Rosario's.  The placement of Rosario's photograph is also not suggestive.  It is in the bottom left corner of the array and is neither first nor last.

   Upon close inspection, the court does not agree that Rosario's makeup causes her photograph to stand out.  The only makeup which is noticeable is her lipstick.  It is not, however, the "bright" color Rosario claims in her motion, and three other women in the array have similar lip coloring.  The court also does not agree that Rosario's picture is clear while the others are blurry; they are all similar in clarity.  The only noticeable differences are that Rosario is the only woman wearing earrings and her skin has a slightly more olive tone.  However, these differences are not enough to render the photographic array impermissibly suggestive, in light of the numerous other characteristics Rosario's photograph shares with the other photographs.

   Furthermore, even if the photographic identification procedure were impermissibly suggestive, the suggestiveness is not such that there was a very substantial likelihood of misidentification.  Rosario argues that the misidentification was

likely because the Atkinson clerk had only a brief period to observe the woman who purchased the money orders, gave a vague description in her report, and five and a half months had passed since the occurrence.  She also contends that Inspector Stassi did not record the clerk's exact words as to her level of certainty when she made the identification, which Rosario claims is contrary to the policy of the United States Justice Department.

The circumstances Rosario cites do not show that misidentification was likely.  The Atkinson clerk waited on the woman and sold her three money orders; she therefore had ample time to view the woman in close proximity.  The clerk considered the transaction suspicious, causing her to fill out a report immediately afterwards, complete with a description of the woman.  Further, Inspector Stassi stated in his July 27, 2006, Report of Investigation that upon identifying Rosario from the photo array, the clerk stated that she would be willing to testify as to her identification.  While the Justice Department's handbook <u>recommends</u> recording the exact language of the witness as to his or her certainty of the identification, Inspector Stassi was not <u>required</u> to do so, and his report indicates her certainty due to her willingness to testify.  <u>See</u> Defendant's Motion in Limine, Ex. B.  Further, there is nothing to indicate that the five and

half month lapse clouded the clerk's memory.  The witness's identification of Rosario from the photo array is therefore admissible.

## Conclusion

For the foregoing reasons, the defendant's motion in limine to exclude identification evidence (document no. 62) is denied.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

December 18, 2008

cc: William E. Christie, Esquire
    Steven M. Gordon, Esquire
    Mark A. Irish, Esquire
    Martin K. Leppo, Esquire
    Paul J. Twomey, Esquire
    Marcie E. Vaughan, Esquire